The State, *ex rel.* Winterburg, Trustee, *v.* Demaree *et al.*, Commissioners.

---

No. 8838.

THE STATE, EX REL. WINTERBURG, TRUSTEE, *v.* DEMAREE ET AL., COMMISSIONERS.

MANDAMUS.— *Officers.*—Mandate never issues to control or direct the exercise of a discretion vested by law in public officers; but where an imperative duty is enjoined by law upon an inferior tribunal, mandamus will lie to compel its performance.

BRIDGES.—*Repair of by County Commissioners.—Mandamus.—Highway.*—County commissioners are charged, as a public duty, with keeping bridges form-

The State, *ex rel.* Winterburg, Trustee, *v.* Demaree *et al.*, Commissioners.

ing part of a public highway belonging to the county, in repair, and the performance of this duty may be compelled by mandamus, but not the manner of its performance.

SAME.—*Embankments.*—*Approaches.*—Embankments directly connected with and leading to a bridge are parts of the bridge, which the county commissioners may be compelled to keep in repair.

SAME.—*Public Highway.*—Where citizens construct part of a bridge or highway, and the public authorities accept and treat it as a part of the public highway, it will be deemed such, and the rights and obligations existing with reference to it will be the same as if built entirely by the county.

From the Johnson Circuit Court.

*G. M. Overstreet* and *A. B. Hunter*, for appellant.

*D. D. Banta*, for appellees.

ELLIOTT, C. J.—The first question which this record presents is : Will mandamus lie to compel a board of county commissioners to repair a bridge forming part of a public highway belonging to the county ?

It is the duty of the county officers to keep the public bridges of the county in repair. *House* v. *The Board, etc.*, 60 Ind. 580; *Pritchett* v. *The Board, etc.*, 62 Ind. 210. We are not enquiring, in this case, what, under the present statute, will be the result of a failure to perform this duty ; we are simply enquiring whether it exists.

It is a familiar principle that where a discretionary power is conferred upon public officers or tribunals, courts will not interfere with its exercise. Mandate never issues to control or direct the exercise of a discretion vested by law in public officers.

Where an imperative duty is enjoined, by law, upon an inferior tribunal, mandamus will lie to compel its performance. The pivotal point in this case is the character of the duty devolved upon the commissioners; if the duty is an imperative one, the case is against them; if they are invested with discretionary powers, the case is with them.

The statute declares that "The board of commissioners of such county shall cause all bridges therein to be kept in re-

pair." 1 R. S. 1876, p. 240. The words of the statute are not directory merely, they are mandatory. If we annex to them their ordinary and usual signification, we must treat them as imposing upon the commissioners an imperative duty. The adjudged cases establish the doctrine that, under statutes such as ours, an imperative duty is imposed, which will be enforced by mandate. In *The Indianapolis, etc., R. R. Co.* v. *The State, ex rel.*, 37 Ind. 489, it was held that a mandate would issue to compel a railroad company to obey the provisions of a city ordinance, requiring it to keep its tracks, at the crossing of a public street, in repair. Many cases are there cited, holding that where corporations are required to repair bridges or highways, the performance of the duty will be compelled by mandate. There is no reason why the principle established in the case cited should not apply to commissioners of a county charged with the duty of keeping bridges in repair. In the leading case of *The King* v. *Bristol Dock Co.*, 6 B. & C. 181, the question before us was carefully considered, and a statute not in terms anything like so positive as ours, was held to create an imperative duty, and the writ was awarded. In *Howe* v. *Commissioners, etc.*, 47 Pa. St. 361, it was held that the duty enjoined upon the commissioners to repair bridges would be enforced by mandamus. The case of *The Borough of Uniontown* v. *Commonwealth*, 34 Pa. St. 296, decides that mandamus will lie to compel the officers of a municipal corporation to keep its streets in repair. A provision in the charter of the city of Covington imposed upon the corporate officers the duty of repairing streets, and it was held that the court could compel the performance of the duty by mandamus. *Hammar* v. *City of Covington*, 3 Met. (Ky.) 494. Mandamus was held to be the appropriate remedy to compel a municipal corporation to repair its streets in the case of *People, ex rel.*, v. *City of Bloomington*, 63 Ill. 207, where it was said: " The charter gives the city council full power to keep in repair the streets, and to provide for keeping them in repair, and to prohibit obstructions therein. This power is granted to be exercised

The State, ex rel. Winterburg, Trustee, v. Demaree et al., Commissioners.

for the public benefit, and its execution can be insisted on as a duty. *City of Bloomington* v. *Bay*, 42 Ill. 503; *Chicago City* v. *Robbins*, 2 Black, 418." It was conceded in *The People* v. *Supervisors, etc.*, 1 Hill (N. Y.) 50, that the duty to keep bridges in repair was an imperative one, but a doubt was suggested as to whether the remedy for a failure to perform it would be by an indictment or by mandamus. The Court of Appeals of Virginia, in *Brander* v. *The Chesterfield Justices*, 5 Call, 548, held that county officers could be compelled, by mandamus, to repair a public bridge. The same general doctrine is declared in *Pumphrey* v. *Mayor, etc.*, 47 Md. 145; S. C., 28 Am. R. 446; and in *County Commissioners, etc.*, v. *Duckett*, 20 Md. 468. In passing upon the duty of county commissioners in relation to highways, the Supreme Court of Massachusetts said: "A public duty is thus imposed upon them for public reasons, in the exercise of which there is no discretion left to them," and it was held that mandamus was the appropriate remedy to compel the performance of that duty. *Richards* v. *County Commissioners, etc.*, 120 Mass. 401.

The common law imposed upon counties the duty of keeping public bridges in repair. In *Rex* v. *West Riding*, 5 Burr. 2594, Justice ASTON, speaking for the court, said: " The inhabitants of the county are of common right bound to repair all public bridges; because they are for the benefit of the county." Lord Coke, in his comment upon the statute of 22 Henry VIII., says: " But admit none at all were bounden to the reparation of the bridge, how then, and by whom should it be repaired by the common law? The answer is, that the whole county, that is, the inhabitants of the county or shire, wherein the bridge is, shall repaire the same; for of common right the whole county must repaire it, because it is for the common good and ease of the whole county." 2 Coke Inst., p. 700. In *Rex* v. *Yorkshire W. R.*, 2 East, 342, Lord ELLENBOROUGH said: " This is a case of great consequence indeed to the public, but after the decisions which have taken place, it does not appear to be of much difficulty. By the

common law, counties are chargeable with the repair of public bridges; unless it be shewn, as the stat. 22 H. 8 c. 5 says, 'what persons, lands, tenements, and bodies politic, ought to make and repair such bridges.'"

The conclusion warranted by the authorities, and supported by sound principle, is that the commissioners are charged, as a public duty, with keeping public bridges in repair, and that performance of this duty may be compelled.

It was long since held by this court that mandamus was the appropriate remedy to enforce the performance of a public duty by an officer or tribunal. *Hamilton* v. *The State, ex rel.*, 3 Ind. 452. This doctrine is well supported by the adjudged cases. *Union Pacific R. R. Co.* v. *Hall*, 91 U. S. 343; *Pumphrey* v. *Mayor, etc., supra*, authorities cited 28 Am. R. 448, n.

The commissioners are invested with a discretionary power to decide what shall be the character of the repairs, and all like matters, and with the exercise of that power courts can not interfere. The duty to repair is one which the courts will enforce, but the manner of its performance they can neither direct nor prescribe.

The second question requiring consideration is: Are embankments directly connected with and leading to the structure constructed across the stream, to be deemed a part of a bridge within the meaning of the law? The case of *The Driftwood, etc., T. P. Co.* v. *The Board, etc.*, 72 Ind. 226, supplies a direct answer to this question. Such embankments are approaches, and approaches are a part of the bridge.

The third question may be thus stated: If the citizens of a particular locality construct part of an approach to a public bridge of the county, is the county bound to keep it in repair? There is no difficulty in solving this question. Where citizens construct part of a bridge or highway, and the public authorities accept and treat it as a part of the public highway, it will be deemed such, and the rights and obligations existing with reference to it will be the same as though the county

officers had themselves built it.   Shear. & Red. Neg., section 246; Angell Highways, section 38;   State v. Town of Campton, 2 N. H. 513;   Watson v. Proprietors, etc., 14 Me. 201.

The answers of the appellees did not contain any defence to the cause of action stated in the complaint, and the court erred in overruling appellant's demurrers.

We have not had any brief from the appellee, and our unaided search, although it has been a somewhat careful one, has not enabled us to find any authority or principle upon which the judgment of the court below can be sustained.

Judgment reversed.

WOODS, J., dissents.