The Board of Comm'rs of Hamilton Co. *v.* The State, *ex rel.* Stephenson *et al.*

No. 13,066.

THE BOARD OF COMMISSIONERS OF HAMILTON COUNTY
*v.* THE STATE, EX REL. STEPHENSON ET AL.

COUNTY COMMISSIONERS.—*Duty to Rebuild Destroyed Bridges.—Mandamus.*—
If the board of county commissioners refuses to repair a bridge which
is in such a condition as to be dangerous to travellers upon the highway,
or to rebuild a destroyed bridge which is essential to the use of an im-
portant highway, it may be compelled by mandate to make the repairs
or to rebuild; but it can not be so compelled to rebuild a bridge which
is not necessary to the use of the highway, not of public utility, and the
rebuilding and maintaining of which would be an injudicious expend-
iture of public funds.

From the Hamilton Circuit Court.

*R. R. Stephenson* and *W. R. Fertig*, for appellant.
*W. S. Christian* and *I. W. Christian*, for appellees.

ZOLLARS, J.—Appellees, as relators, applied for and ob-
tained a peremptory mandate against the board of commis-
sioners of Hamilton county to compel it to rebuild a bridge.
They averred in their complaint that a designated public
highway crosses a stream of water known as Stony Creek;
that the stream is impassable on account of high water and
the bad and dangerous condition of the crossing or ford; that
twelve years prior to 1883 the board of commissioners of
Hamilton county erected a bridge over the stream at the
crossing of it by the highway, which bridge formed and was
an essential part of the highway; that by a flood in the stream
in the spring of 1883 the bridge was carried away and de-
stroyed; that by reason of the destruction of the bridge the
highway has become impassable and rendered useless, and that
the county board has neglected and refused to rebuild the
bridge.

In its return to the alternative writ of mandate, the board
denied that the bridge had been constructed by it, and also
denied that the stream was or is impassable on account of

high water or the bad and dangerous condition of the crossing or ford. It is also averred in the return that the stream is a small one, and is fordable by horses and vehicles at all times except at times of extraordinary floods, and at such times for not longer than a day or two, and that at such times all persons having occasion to pass that way can reach any destination by going one-half mile east, where the stream is crossed by a parallel and free gravel road, and a good bridge which was constructed before this action was commenced; that the ford at the place where the bridge in question here had been, is smooth and solid, and covered with gravel, and that the banks are low, making an easy approach to the ford; that the highway is not generally used, being used only by a few persons in the immediate vicinity; that all persons accustomed to use it have used it since the bridge was swept away without serious inconvenience, and without danger, by going across the ford; that the bridge was not essential to the highway, nor to the maintenance of the same in repair and in a passable and safe condition; that the bridge asked for would be of no greater utility, nor better serve the public convenience or safety, than the ford properly maintained; that the ford can be maintained at a nominal cost, while to construct and maintain a safe bridge at the crossing would entail large expenses and burdens upon the public; that there is a large number of streams in the county—larger than Stony Creek at said crossing—which cross many highways more generally used by the public than the highway mentioned in the complaint; that where such streams cross the highways there are no bridges; that at such crossings there is a far greater necessity for bridges than at the crossing of Stony Creek, and that bridges at such crossings would be of far greater public utility than at that crossing; that by reason of the erection of a new court-house, and the construction of free gravel roads, etc., the county has a debt of $197,-500, $20,000 of which is borrowed money; that the total valuation of the property in the county is $10,000,000; that

the indebtedness of the county can not be increased without seriously interfering with the administration of county affairs, by bringing the amount so near to the constitutional limit as to hinder the making of temporary loans in cases of emergency; that the board of commissioners has added to the amount of taxes levied for county purposes five cents on the one hundred dollars for the purpose of building and repairing bridges, and has built some bridges and contracted for the construction of others since the bridge in question was washed away, and that the fund to accrue from the levy will be largely insufficient to build even a major part of the bridges in the county for which there is a much greater need and more general demand than for the bridge over Stony Creek; that to levy a greater sum for such purposes would, in the opinion of the board, be imposing a greater burden upon the taxpayers of the county than the exigencies made by the present condition of the bridges and streams in the county require; that for several years, and since the destruction of the bridge over Stony Creek, many citizens and taxpayers have petitioned the board for the building of bridges which would be of much greater public utility than the bridge over Stony Creek; that, before the filing of the complaint, many certificates have been filed before the board by township trustees showing the necessity for bridges in the several townships of the county, the cost of which would exceed fifty dollars; that the funds in the treasury are needed for the current expenses of the county, and that, while there may be sufficient funds on hand to build the bridge over Stony Creek, there is not sufficient to build even a small proportion of the bridges petitioned for by citizens and taxpayers, and more generally demanded by the citizens and taxpayers of the county; that sufficient funds to build the bridges thus asked for could not be raised in the next five years by taxation without a greater burden on the citizens of the county than they ought to be asked to bear, and greater than, in the opinion of the board, would be expedient and for the best interest of the county;

that a bridge ought not to be built and maintained at said crossing of Stony Creek, in view of the fordable condition of the stream and the infrequent use of the highway; that to build such a bridge would not be consistent with a uniform, fair and judicious improvement of the highways throughout the county, considering the present financial condition of the county; that in view of all the facts stated, and in the exercise of its discretion and best judgment in the management of the county affairs, the board has declined to rebuild the bridge over Stony Creek.

We have given an extended abstract of appellant's return to the alternative writ of mandate, because of the importance of the question involved, and because of the construction which is put upon some of our former decisions by counsel for appellees, and which seems to have been put upon them by the court below. The demurrer, which was sustained to the return, admitted as true all of the facts stated therein which are well pleaded. Without again restating them in detail, or in substance, we think that, considering all the facts stated in the return, they show clearly that the bridge which was washed away was not, and that the proposed bridge would not be, essential to the highway or of public utility. The facts thus stated show that the bridge, if rebuilt, would not compensate the public for the cost and inconvenience necessary to and resulting from the rebuilding and maintenance of it. Is, then, the board of commissioners of the county unconditionally bound to rebuild all bridges which may be destroyed, although such bridges are not essential to the existence or use of the highways upon which they may be situated; although, when rebuilt, they will not be of public utility; although the building and maintenance of them will greatly embarrass the county, and delay and prevent the building of bridges at other points where bridges are much more needed? May or must the courts, by writs of mandate, compel the county boards to rebuild such bridges under such circumstances?

Section 2892, R. S. 1881, provides that the board of commissioners of the county "shall cause all bridges therein to be kept in repair." When the question arises in an action for damages on account of injuries to person or property resulting from the negligence of the county board in building or maintaining a bridge, it is a very plain question under the above statute and our decisions. When a bridge is a part of a public county highway, the county, or, what in law is the same thing in this State, the board of commissioners, is bound to exercise reasonable care in the maintenance of it, so that injury may not result to persons travelling upon the highway. So our cases declare. See *Board, etc.,* v. *Legg,* 110 Ind. 479, and cases there cited.

The board of commissioners owes a duty to the public to keep the bridges forming a part of the public highways of the county in a safe condition, so as to prevent injury to persons travelling upon such highways. And where it is once ascertained that such bridges are in such a condition as to be dangerous to travellers, the board of commissioners has no discretion as to whether or not it will repair them. In such a case, the board can not say that, notwithstanding the bridge is in such a dangerous condition as will result in injury to travellers upon the highway, unless it is repaired, it will not make the repairs and thus prevent the injury. If such bridge is in such dangerous condition, and the board refuses to make the necessary repairs to prevent such injury, the duty to repair may be enforced by mandamus. *State, ex rel.,* v. *Demaree,* 80 Ind. 519.

It was held in the case of *State, ex rel.,* v. *Board, etc.,* 80 Ind. 478 (48 Am. R. 821), upon the facts of that case, that mandamus will lie to compel county commissioners to rebuild a bridge where there is a substantial destruction of the original bridge. Upon the facts and reasoning in that case, the duty of the board of commissioners to the public was not so much to prevent injury to travellers upon the highway as to keep the highway in a condition to be used by the travelling public.

The decision in that case, however, should not be extended beyond the facts in the case. The facts are not all set out, but the opinion proceeds upon the assumption all the way through that the bridge was an essential part of the highway; in other words, that without the bridge the highway would be useless to the public, and that the neglect to rebuild the bridge would, for all practical purposes, be an abandonment of the highway. It was said: "The case in hand strongly illustrates the soundness of the proposition that it is the duty of the commissioners to rebuild a bridge which forms an essential part of a much travelled highway. If the bridge is not rebuilt, a public way is cut in two and rendered useless for all practical purposes." •

It was not held, nor intended to be held, that in every conceivable case the board of commissioners will be compelled by mandamus to rebuild a bridge, simply because there was a bridge over the stream at the particular place, which had been destroyed. Such is not the law anywhere. Suppose, for example, that a bridge has been built over a stream, and that in time the course of the stream becomes changed so as to leave the bridge over dry ground; that subsequent to such change the bridge, from any cause, is destroyed, and that the old channel may be filled up at a small cost; clearly, in such a case, no court would issue a peremptory mandate to compel the commissioners to rebuild the bridge.

The case before us is not so strong as that supposed, but it is, in a sense, analogous to it. Here the bridge is in no sense essential to the highway, or to the use of it. A public way will not be cut in two and "rendered useless for all purposes" by a failure to rebuild the bridge. The bridge, if rebuilt, will not even be of public utility, in the proper sense of that term. A proper management of the affairs of the county requires that public funds, which must ultimately be raised by taxation upon the citizens, shall not be expended in the rebuilding of the bridge. Surely, the board of com-

missioners owes no duty to any one to waste public funds, and thus increase the burdens of taxation.

When the facts are such as the demurrer to the return in this case admits them to be, we know of no reason why the board of commissioners might not, in the exercise of its discretion, discontinue and remove the bridge, and thus save the expense of maintaining it.  See *Board, etc.,* v. *Legg,* 93 Ind. 523, 529 (47 Am. R. 390.)

The right of the courts to compel the repair or rebuilding of a bridge by mandate, has been placed upon the ground that the bridge was either essential to the use of the highway or would be of public utility.

In *Borough of Uniontown* v. *Commonwealth, etc.,* 34 Pa. St. 293, the return was held bad because it did not deny that the repair of the street was needed.  LOWRIE, C. J., said: " The return does not deny that the repair is needed, and does not aver that there is any other functionary who has funds in his possession or power which he is bound to apply to that purpose.  The case of *The King* v. *Oxfordshire,* 4 B. & C. 194, 10 Eng. C. L. R. 310, was decided on these principles, and we think this (mandamus) is a proper form of remedy.. Possibly, it would not be allowed, where the necessity of the repair is the matter in dispute ; but, where only the liability is in issue, we see no objection to it." See, also, *State* v. *Town of Campton,* 2 N. H. 513 ; *Commonwealth* v. *Justices of Kanawha County,* 2 Va. Cases, 499 ; *Rex* v. *Inhabitants, etc.,* 5 Burr. R. 2594.

In the case before us, as we have seen, the return to the alternative writ, in full and ample terms, denies that the bridge is necessary, and shows that public funds ought not to be expended in the rebuilding and maintenance of it.  Such being the case, the demurrer to the return ought to have been overruled.

For the error of the court in sustaining the demurrer to the return to the alternative writ, the judgment is reversed,

and the cause is remanded, with instruction to the court below to overrule the demurrer.

Filed Jan. 27, 1888.