Filed June 21, 1889.

No. 14,866.

THE STATE, EX REL. SHRYER ET AL., *v.* THE BOARD OF COMMISSIONERS OF GREENE COUNTY.

COUNTY COMMISSIONERS.—*Building or Repairing Bridge.—Discretion.—Mandate.*—When the question of building or repairing a bridge involves merely the matter of public convenience, the subject, under section 2885, R. S. 1881, is entirely within the discretion of the county commissioners, and when, in the exercise of that discretion, they have refused to build or repair the bridge, they can not be compelled to do so by mandate.

SAME.—*Destruction of Bridge.—Abandonment.—Repair.—Public Convenience.*—Where a bridge is practically destroyed, and the alternative is presented of repairing it or of abandoning it and resorting to some other means or place in order to cross the stream, the question is then one of public convenience, and is left by the statute to the discretion of the county commissioners; and if they determine that it is impracticable, on account of the condition of the county revenues, to repair and maintain the bridge, they can not be coerced by mandate.

From the Greene Circuit Court.

*W. W. Moffett* and *C. E. Davis*, for appellants.

*S. O. Pickens, A. G. Cavins, E. H. C. Cavins* and *W. L. Cavins*, for appellee.

The State, *ex rel.* Shryer *et al., v.* The Board of Comm'rs of Greene County.

MITCHELL, J.—This is an appeal from a judgment against the relators, Shryer and others, who made application to the court below for a peremptory writ of mandate to compel the board of commissioners of Greene county to repair a bridge on a public highway over White river.

It appears, from the facts returned in a special verdict; that the bridge in question was built by the county about the year 1874, and that the highway of which it formed a part was a much travelled public thoroughfare until in the month of February, 1883, when the freshets washed away the bank and approach at the east end of the bridge, leaving that end of the structure out in the river. After that the bridge was practically abandoned, the commissioners, after considering a number of bids therefor, refusing to rebuild it. It was found that while it was in use the annual cost of keeping it in repair was $380, and that it would cost $15,000 to repair the bridge and approaches so that it could be used. The jury found that the permanent indebtedness of Greene county was $90,000, and that there was a deficiency of over $4,000 in the amount of funds on hand necessary to pay the outstanding orders for current expenses then incurred. The population of the county is 25,000, and the total value of the taxable property is $5,627,950. They also find that it would be impracticable, considering the condition of the county revenues, to repair and maintain the bridge.

The question is, whether, upon the facts found, the court erred in refusing the writ prayed for. Section 2885, R. S. 1881, requires the county commissioners, whenever, in their opinion, the public convenience demands that a bridge should be repaired, or built, over any watercourse, to cause surveys and estimates therefor to be made, and direct the same to be erected. Section 2892 requires the boards of commissioners in each county to cause all bridges therein to be kept in repair. Evidently the duties of the commissioners, under the above sections, are not of the same character.

When the question of building or repairing a bridge in-

446    SUPREME COURT OF INDIANA,

The State, *ex rel.* Shryer *et al.*, *v.* The Board of Comm'rs of Greene County.

volves merely the matter of public convenience, the subject is then entirely within the discretion of the board of commissioners, and it is not for the courts to interfere in any manner to control the judgment of that body. Where, as in this case, a bridge is practically destroyed, and the alternative is presented of repairing it, or of abandoning the bridge and resorting to some other means or place in order to cross the stream, the question is then one of public convenience, which, by the express terms of the statute, is committed to the " opinion," or discretion, of the county commissioners. A bridge may have been built at a place where events have demonstrated that it can not be maintained within any reasonable expenditure, or experience may have shown that public convenience would be better subserved by rebuilding the bridge at another place. These are subjects for the judgment of the board of commissioners.

It has been said, again and again, that circumstances may arise which may justify the board of commissioners, in the exercise of its discretion, in discontinuing or removing a bridge, in order to save the expense of maintaining it. *Board, etc.,* v. *Legg,* 93 Ind. 523 (47 Am. Rep. 390) ; *Board, etc.,* v. *State, ex rel.,* 113 Ind. 179.

How can it be said that the county commissioners may only cause a bridge to be repaired in case, in their opinion, the public convenience requires it, if it is within the province of the courts to compel them by mandate to repair, even though, in their opinion, the public convenience does not require it?

The duty of county commissioners to cause all bridges to be kept in repair, so as to prevent injury to persons travelling upon the public highways of which they form an essential part, is in no sense discretionary. That is an absolute obligation, designed for the safety and protection of the public. So, if the use of a public highway, which constituted the only reasonably available means of public communication, was substantially destroyed by the failure to repair a bridge,

the question then would not be one of public convenience, but of practical necessity. Doubtless cases might arise in which it would be the imperative legal duty of the commissioner to afford the means, or take the necessary steps, to make the repairs. *State, ex rel.,* v. *Demaree,* 80 Ind. 519; *State, ex rel.,* v. *Board, etc.,* 80 Ind. 478.

The facts found fall far short of making the present such a case. For all that appears, the stream may be crossed by means of a ford, or ferry, or another bridge—as the evidence shows the fact to be—may have been built within a reasonably convenient distance from the one destroyed.

Mandamus is an extraordinary remedy, the writ being one of the highest known to the law, and it only issues against a public officer or tribunal when the law imperatively enjoins the performance of a specified act or duty which the officer or tribunal refuses to perform.

There is no proposition more firmly settled than that where official action depends upon the exercise of the judgment and discretion of the officer, courts can not interfere to dictate how the officer shall act, or what judgment he shall give. High Ex. Leg. Rem., section 42, *et passim.* As long as there is any room for reasonable doubt as to whether or not a matter depends upon the result of an inquiry or investigation into the facts, or which involves the hearing and consideration of evidence which is to control the action of the officer or tribunal, courts will not undertake to review the conclusion or judgment collaterally, in a mandamus proceeding, after the officer or body has acted. *Holliday* v. *Henderson,* 67 Ind. 103; *People* v. *Common Council,* 78 N. Y. 33.

It appears, from the facts found, that the board of commissioners, in the exercise of its discretion, refused to order the bridge repaired. The present is, therefore, not a case where the commissioners refused to act, but is one in which they did not act in a manner to suit the relators, who now ask the court to compel them to reverse their former action. This can not be done by mandamus proceedings. This case

is fully within the principles which controlled the judgment in *Board, etc.,* v. *State, ex rel., supra.*

The evidence sustains the verdict, and there was no error in admitting evidence to show the amount it would cost to repair the bridge, and the condition of the finances of the county. It may be that the bridge ought to be rebuilt, but that is a matter for the determination of the county commissioners, to be determined in view of the public convenience,. and the condition of the county treasury.

The judgment is affirmed, with costs.

Filed June 22, 1889.