## 345. EARLY COUNTY *v.* FAIN.

1. "A bridge which constitutes a portion of the public road is necessarily a public bridge."
2. It matters not by what authority such bridge is constructed, whether by act of the General Assembly or an order of the county officers, by the road hands or by an individual, if it is a part of the public county road and the public authorities use it, it becomes a public utility, and the duty of keeping it in repair is imposed upon the county authorities, and the county is liable for an injury resulting from a negligent performance of such duty.

Appeal from Early superior court—Judge Reagan presiding. December 5, 1906.

Argued May 13,—Decided July 10, 1907.

*R. H. Sheffield,* for plaintiff in error.    *L. M. Rambo,* contra.

HILL, C. J. Fain brought suit in a justice's court against Early County, on account of damages resulting from injuries received by his horse in falling through a public bridge of said county. By consent the case was appealed to the superior court without a trial in the justice's court. The judge of the superior court, without the intervention of a jury, tried the case on the following agreed statement of facts: "That on the 14th day of February, 1904, J. R. Fain was driving along the Fort Gaines and Damascus public road in a buggy with a horse attached thereto, which was the property of J. R. Fain; that on said public road, about one fifth of a mile south of Gaines cross-roads in the 1535th district, G. M., of Early County, a bridge was constructed over a gully or drain, said bridge being under ten feet in length, by the County of Early by its proper officers, to wit, the superintendent of roads of Early County, Georgia, and not constructed under sections 344, 345, or 346 of the code, since December 29th, 1888; that said described bridge formed a part of the Fort Gaines and Damascus public road, and was a continuation of said public road over a drain, and was used by the public as a public bridge; that on the 14th day of February, 1904, the flooring of said bridge was in an inferior, insufficient, and decayed condition, and that the timbers of said bridge were in an inferior and decayed condition, which was unknown to J. R. Fain, and which was known to the superintendent of the public roads of Early County and the county commissioners of Early County; that on the said 14th of February, 1904, the

horse which the said J. R. Fain was driving fell, without fault on the part of J. R. Fain, through said bridge, on account of the inferior and decayed condition of the flooring and the timbers of which said bridge was constructed, and sustained permanent injuries, which decreased the value of the horse in the sum of $75.00, in which sum the said J. R. Fain was and is damaged." The court found for the plaintiff $75.00, and judgment was entered accordingly. Defendant's motion for a new trial was overruled.

The single question submitted for our decision is, whether the bridge, whose defective condition caused the injury to plaintiff's horse, was a public bridge within the meaning of the code. The Supreme Court in the cases of *Tattnall County* v. *Newton*, 112 *Ga.* 780, 38 S. E. 48, and *Howington* v. *Madison County*, 126 *Ga.* 700, 55 S. E. 942, defines a public bridge as follows: "A bridge which constitutes a part of a public road is necessarily a public bridge." The pleading in this case alleged that the bridge in question was constructed by the county authorities since the passage of the act of December 29, 1888, and was a public bridge. The stipulation as to the facts is that the bridge was so constructed since the passage of said act, and "formed a part of the Fort Gaines and Damascus public road, and was a continuation of said public road over a drain, and was used by the public as a public bridge." The court in the *Tattnall County* case, supra, says, "If a public bridge, and not within the limits of an incorporated municipality, it seems inevitable that it must be regarded as a county bridge. No matter how the bridge comes into being, if it does so or remains in place with the assent of the proper county authorities, its character as a public concern becomes established." "If an individual builds a bridge, and the public use it, and it becomes a public utility, the public authorities must repair it." Elliott on Roads and Streets (2d ed.), §§ 28, 30, 32; 4 Am. & Eng. Enc. L. (2d ed.) 921. We therefore conclude that a bridge which constitutes a portion of the public road is necessarily a public bridge. To make it a public bridge, it is not necessary that it be established by an act of the legislature or an order of the ordinary or county commissioners as a public bridge, and built and repaired according to the Political Code, §§ 344, 345, 346, with funds raised under § 404, par. 4. It may be built by the road hands and kept in repair by them, or it may be built

by private individuals and given to the public; it is nevertheless a public bridge if a part of the public road, and becomes a public utility by public use. It is admitted that the bridge in question was "constructed by the County of Early by its proper officers; that it formed a part of the public road and was used by the public as a public bridge." Its character as a public bridge is thus established by these admissions under the rulings of the Supreme Court and other authorities above cited. The act of December 29, 1888, (Pol. Code, §603) very largely extends the liability of counties for injuries caused by defective public bridges. It makes counties primarily liable for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities. It is admitted that the bridge now under consideration was constructed by the county authorities since the act of 1888. It seems clear that under these admissions, coupled with the other admissions that the bridge was defective, that the county authorities knew of such defective condition, and that the injuries occurred to the horse because of such defective condition and without fault of the plaintiff, the judgment of the court against the county was inevitable.

The tendency of modern legislation is to greatly enlarge the statutory liability of counties with reference to highways. This is due to the fact that counties are becoming more populous, and are invested with greater powers and provided with larger means of performing their public duties. The distinction which now exists between municipalities and counties as to the duty of keeping in repair highways and bridges, and correlative liability for failure to exercise such duty, will gradually disappear as the reason for such distinction ceases. "Both cities and counties are governmental corporations invested with authority over a designated locality, and what is the duty of one is, in its essential nature, the duty of the other." Elliott on Roads and Streets (2d ed.) §52; 2 Dill. Mun. Corp. (3d ed.) §978.

*Judgment affirmed.*