GELLASCH *v.* VAN SYCKLE.

1. DEDICATION—HIGHWAYS AND STREETS—ACCEPTANCE.

Land became a part of township highway system where formally dedicated for such purpose by deed and accepted through work done by highway commissioner (1 Comp. Laws 1929, § 3935).

2. HIGHWAYS AND STREETS—BRIDGES AND CULVERTS.

Bridges and culverts are part of the roads upon which they are located and are governed by the law applicable to roads (1 Comp. Laws 1929, §§ 3935, 4522).

3. BRIDGES—ACCEPTANCE OF TERMINI.

Acceptance of bridge as necessary part of township highway system from island to mainland is effected by acceptance of both termini as public road through work done thereon although no work was done on bridge itself (1 Comp. Laws 1929, §§ 3935, 4522).

4. SAME—PRIVATELY BUILT—PUBLIC USER—MAINTENANCE.

Privately built bridge from island to mainland used by public as necessary link of township highway system is a part of the system itself and renders township liable for its maintenance (1 Comp. Laws 1929, §§ 3935, 4522).

Appeal from Oakland; Covert (Frank L.), J. Submitted April 4, 1934. (Docket No. 82, Calendar No. 37,662.) Decided June 4, 1934.

Bill by Otto C. Gellasch and another against Myron M. Van Syckle and wife and Township of Waterford, a municipal corporation, to compel the maintenance of a bridge. From decree for plaintiffs against defendants Van Syckle, they appeal. Reversed and decree ordered entered against defendant Township of Waterford.

*Thomas F. Carson* and *Donald C. Porritt,* for plaintiffs.

*A. L. Moore,* for defendants Van Syckle.

*James H. Lynch,* for defendant Township of Waterford.

FEAD, J. In 1919 defendant platted certain lots in Oakland county under the name of Bird Island Subdivision. The plat was approved by the township board. A highway called "Island Park Drive" ran to lot 101, which abutted on Lake Oakland. The highway did not touch the lake.

In 1921 defendant Van Syckle (to whom we will refer as defendant) presented to the township board for approval a plat, called Bird Island No. 1, of an island east of the first subdivision. The single highway thereon runs to the water's edge, opposite lot 100 of the other plat. The plat shows lot 100 marked as "Island Park Drive, Bird Island Subdivision," and dotted lines running from the lot to the end of the highway on the island. The island subdivision contains 27 lots, a park and a street, and 16 or 17 houses have been constructed thereon. By the plat, the park and street were dedicated to public use.

Before proposing the island plat, defendant had constructed a bridge 132 feet long from lot 100 of the mainland to the water's end of the island road, as it appears on the plat. It is undisputed that the bridge was discussed when the plat was presented for approval. Defendant wanted it taken over by the township as a highway, a member of the board objected, defendant stated he would withdraw the plat if the bridge was not so accepted and finally the board agreed to accept the bridge as part of the highway system and defendant agreed to deed lot 100 to

the township for highway purposes. The plat was formally accepted by the board June 28, 1921, but no mention was made of the bridge in the records. The bridge has been used generally by the public since the plat was approved.

Under agreement with the board when the plat was accepted, defendant constructed the island highway in 1924, and it was formally accepted by resolution of May 3d. May 5th he delivered to the township clerk a deed of lot 100 for highway purposes. The clerk claims he did not present it to the board for two or three years.

About May 27, 1927, when the personnel of the township board had changed and the bridge had become out of repair, the attorney for the township notified defendant that the township claimed the bridge was not a highway and the township was not liable for its upkeep. August 11, 1928, the township board, by resolution, disclaimed liability for the bridge, denied it was a highway, and ordered the deed returned to defendant. It was offered to him and he refused to take it. In 1929 notices were posted near the bridge, stating it was a private bridge and the township was not liable for it.

At various times work was done by the highway commissioner on lot 100. It is apparent, and the court so found, that the commissioner recognized and worked lot 100 as part of the highway system. However, while road machinery was taken over the bridge for work on the island the township did no work on the bridge itself nor other specific act to recognize it as public.

Defendant sold lots on the island under representation that the bridge was a highway, to be maintained by the township. Plaintiff purchased a lot. The bridge is now in need of repair. Plaintiff

brought this action to compel its repair by either defendant Van Syckle or the township. The question is who has the obligation to maintain it. The court held it was not a highway and the obligation rests on Van Syckle and entered decree accordingly.

Had defendant remained owner of all the island, his understanding with the township regarding the bridge would be important. But it needs little consideration here because the rights of the general public, as represented by plaintiffs, other island home owners and all who have occasion to go on the island, have intervened. Whether a public road may have privately owned stretches on it is of more interest than the private controversy between defendant and the township.

The fact that lot 100 became part of the township highway system, by formal dedication through deed and acceptance through work done by the highway commissioner, needs no elaboration. *Crosby* v. *City of Greenville,* 183 Mich. 452; 1 Comp. Laws 1929, § 3935.

Bridges and culverts are part of the roads upon which they are located and are governed by the law applicable to roads. 1 Comp. Laws 1929, § 4522; *In re Claim of Moross against Hillsdale County,* 242 Mich. 277; 4 R. C. L. p. 195. The bridge forms the only means of pedestrian or vehicular communication between the mainland and the island. It is a way of necessity connecting two highways accepted by the township as parts of the highway system. The whole of the road need not be worked in order to be accepted by the public. It would seem plain under the highway law that, by accepting both termini as public roads, the township also accepted the bridge necessary to join them to the public system.

But there is another principle involved, which is well established at common law although we have no cases in point in this State. The general rule has been stated:

"A private bridge is one erected by one or more private persons for their own use and convenience. But whether a bridge is public or private depends more on the use to which it is subjected than on who the builder was. Hence, if an individual builds a bridge and the public uses it, and it becomes a public utility, the public authorities must repair it as it is then a public bridge. However, if a private bridge is erected by one for his own benefit and so continued, although the public uses it, if it is not of public utility, the county need not repair it." 9 C. J. p. 423.

"In presuming that bridges, which are of benefit to the public have been accepted by the public, effect is given to the familiar principle that acceptance may be inferred from the beneficial character of the grant." 1 Elliott, Roads and Streets (4th Ed.), § 33.

Perhaps the pioneer case in this country is *State* v. *Town of Campton,* 2 N. H. 513, in which the court said:

"It seems to be well settled, that a bridge, though not erected by the public, may still become a public charge in respect to its repairs.

"The true test seems to be, that the bridge, if dedicated to the public, if used by the public, and found to be of public utility, should not continue a burthen to the individuals who built it. * * *

"A different doctrine would damp the enterprise and liberality of individuals; and when a gift of the above character is thus tacitly received and beneficially employed, the receiver ought to take the

burthen with the advantage and make all needful repairs. * * *

"Though the use and repairs of it by the public may have been under a protest against their liability, and for a shorter period than 20 years, the liability is still fixed, if the bridge be not indicted as a nuisance and be used by the public so long and so much as to evince its usefulness to them."

In discussing the rule in England, Lord Coleridge remarked in *Queen* v. *Inhabitants of the County of Southampton,* 19 Q. B. D. 590, 601 (56 L. J. M. C. 112, 57 L. T. R. 261, 16 Cox, C. C. 271) :

"We also think that the law laid down in those cases is all the stronger if the bridge about which the dispute arises is part of an existing highway, and has its termini in the highway; the argument for the prosecutors would be much more cogent in such a case, for if the bridge were not useful to and used by the public, it would be a nuisance if built in the public highway."

Other authorities are: *Township of Newlin* v. *Davis,* 77 Pa. 317 ; *State, ex rel. Winterburg, Trustee,* v. *Demaree,* 80 Ind. 519; *People, ex rel. Corey,* v. *Commissioners of Highways,* 158 Ill. 197 (41 N. E. 1105) ; *County of Tattnal* v. *Newton,* 112 Ga. 779 (38 S. E. 47) ; *Chesapeake & Ohio R. Co.* v. *Jennings,* 98 Va. 70 (34 S. E. 986) ; *Board of County Commissioners, Cloud County,* v. *Board of County Commissioners, Mitchell County,* 75 Kan. 750 (90 Pac. 286) ; *Requa* v. *City of Rochester,* 45 N. Y. 129 (6 Am. Rep. 52) ; Ann. Cas. 1914 A., 550, note; 4 R. C. L. p. 220.

These authorities amply support a rule that a bridge, although built by an individual, which is a necessary link in a highway, is a part of the system itself and a public bridge. The suggestion in *King*

v. *Inhabitants of the County of Bucks*, 12 East's T. R. 192 (104 Eng. Repr. 76), is pertinent that a bridge in a highway is as public as the highway itself.

It will also be noted that many of the cases support the doctrine that mere acquiescence, by permitting continuance of a privately constructed bridge in a highway, is sufficient acceptance by the public; that if the public authorities desire to reject the bridge they should bring proceedings to abate it as a nuisance.

We think that, by the acceptance and operation of both the approaches to the bridge as a highway, the township accepted the bridge as part of the public road system and is liable for its maintenance.

Decree reversed and one will be entered in accordance with this opinion, with costs to plaintiff and defendant Van Syckle.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.