## C. L. STRAUB v. CITY OF PITTSBURGH.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 3, 1890—Decided November 10, 1890.

1. By the provisions of the act of June 14, 1887, P. L. 395, in relation of the government of cities of the second class, the powers and duties of the board of guardians of the poor of the city of Pittsburgh were transferred to the city councils and to the Department of Charities of said city.

2. Though, at and before the passage of said act of June 14, 1887, the legal title to the city poor farm was in said board of guardians of the poor, the board was but a naked trustee of the title, the beneficial ownership being in the city, with full power of sale in its councils under § 12 of said act.

3. A sale of said farm, authorized by the act of May 25, 1887, P. L. 263, having been made under an ordinance approved by the mayor, a subsequent resolution by councils confirming it authorized a valid conveyance without the approval of such resolution by the mayor, or proceedings in the Common Pleas under the act of April 28, 1887, P. L. 75.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 219 October Term 1890, Sup. Ct.; court below, No. 383 October Term 1890, C. P. No. 2, in Equity.

On September 2, 1890, Charles L. Straub, for himself and in behalf of other citizens, residents and taxpayers of the city of Pittsburgh who might desire to become parties plaintiff, filed a bill in equity against the city of Pittsburgh, a city of the second class, H. I. Gourley, mayor, Robert Elliott, chief of the Department of Charities, Milton I. Baird, and Carnegie, Phipps & Co., Limited, averring in substance as follows:

That the city of Pittsburgh was about to sell and convey to Milton I. Baird, or to Carnegie, Phipps & Co., Limited, his assignees, the tract of land known as the City Poor Farm, the legal title to which was vested in the Guardians for the Relief and Employment of the Poor of the City of Pittsburgh, a corporation created by the act of March 6, 1847, P. L. 233, and had been acquired by the said corporation with moneys derived from taxes collected by it from the taxpayers of the said city; that the city of Pittsburgh, illegally and without authority of law claiming to be the owner of said land and the buildings and improvements thereon, by an ordinance approved July 12, 1890, a copy of which was annexed to the bill, ordained and enacted that all said real estate should be sold and conveyed in the manner therein set forth; that in pursuance of said ordinance, Robert Elliott, chief of the Department of Charities, had advertised the said real estate for sale, and thereafter, in the presence of the mayor, the chief of the Department of Public Safety and the chief of the Department of Public Works, of said city, had opened the bids for the same and thereupon entered into a written contract on behalf of the said city to sell and convey to the defendant Milton I. Baird, in fee-simple, a good and indefeasible title to all said real estate; that the said Robert Elliott thereafter returned a report of his said action, with a copy of the said contract entered into by him, to the councils of said city, who by resolution confirmed the same, but said resolution of confirmation was not presented to the mayor of said city for his approval, as required by law, and had never been approved by him and was therefore void and of no effect; and that the said defendants were about to execute and deliver a deed in fee-simple for the said lands, with covenants of general warranty, to the said defendant, Milton I. Baird, or to the said Carnegie, Phipps & Co., Limited, and to receive the purchase money thereof and appropriate the same to the use of the said city. Upon the foregoing and other averments, sufficiently indicated in the opinion of the court below, the bill prayed for a decree:

1. That the said defendants, the mayor, the city of Pittsburgh, the chief of the Department of Charities, or either of them, had no lawful right, power, or authority to sell or convey the said lands or any part thereof.[7]

2. That the contract entered into by the said defendants with

Opinion of Court below.

the defendant Milton I. Baird, was without authority and null and void.[8]

3. For an injunction restraining said contemplated conveyance.[9]

4. For other relief, etc.

Answers having been filed by the defendants, by agreement of the parties the court heard the cause on the pleadings and affidavits filed, and thereafter, on September 20, 1890, filed the following opinion, EWING, P. J.:

The parties by writing filed have agreed that the court shall pass upon the whole case made by the pleadings and affidavits, without a master's intervention, and enter a final decree. There are really no facts in dispute. The allegations of fact contained in the bill are admitted by the answers, except that of collusion between the parties proposing to purchase, and that is squarely denied by the answers, and complainant's counsel abandon that allegation.

The proceedings in relation to the opening of the proposals, as set forth in the complaint, were in strict accordance with the previous ordinance of councils directing the advertisement for proposals to purchase.

[The Pittsburgh City Poor Farm, situate in Mifflin township, Allegheny county, with all the improvements thereon, was wholly paid for by the sale of property belonging to the city, and by taxes levied on the entire city therefor.][1]   On June 14, 1887, the legal title to this property was in the board of guardians of the poor of the city of Pittsburgh. This board was elected by the city councils and performed the municipal functions of caring for the poor of the city.

The board was but a trustee of the title, with no interest otherwise in the property. It was in no sense a private corporation. [By act of March 22, 1877, P. L. 16, it was declared to be a department of the city government. It was so without such a legislative declaration.][2]   By act of May 25, 1887, P. L. 263, the board was authorized to sell the poor farm, with consent of councils, and from the proceeds purchase other lands in Allegheny county, and erect buildings thereon and pay the balance into the city treasury. [By virtue of the act of June 14, 1887, P. L. 395, relating to cities of the second

Opinion of Court below.

class, i. e. Pittsburgh, the powers and duties of the board of guardians of the poor were taken and transferred to the city councils and to the Department of Public Charities.] [3]

Assuming for the present the acts to be constitutional, and as we interpret them, upon the reorganization of the city government under the act of June 14, 1887, all the powers and duties of the board of guardians were ended, unless it was the duty of executing a formal conveyance of the property in question to the city, their cestui que trust. They were the mere naked trustees; and while, it may have been their duty to convey the legal title, such conveyance was not necessary to the ownership of the city.

After the term of office of all the members of the board who were in office at June 14, 1887, had expired, and when the ordinance took effect, February 1, 1888, the said board of guardians of the poor did execute and deliver to the city of Pittsburgh a deed conveying to said city all the interest and title of said board to the property in question, to wit, on July 24, 1890. No other members of said board had been elected after June 14, 1887. In our opinion the city had the title to said property, with the right to convey it in accordance with law, and no such power exists in the late or any future board of guardians.

The twelfth section of the act of June 14, 1887, provides that " the councils of said cities shall have full power and authority to provide, by ordinance, for the relief and employment of the poor of said cities, and for that purpose shall have power and authority to sell and purchase real estate and improvements, and erect such improvements as may be deemed necessary for the proper care and maintenance of said poor." This power is of course to be exercised in accordance with the law in relation thereto, whatever that may be.

In this case, certainly, an ordinance of councils duly passed is necessary. Such an ordinance directing the sale of the Mifflin township poor farm belonging to the city was duly passed and formally approved by the mayor, as set forth in the answer of the city of Pittsburgh. It enacted that all the property known as the " City Farm," the land in question, should be sold and conveyed, prescribed the terms and conditions of the sale, and prescribed the duties of the city officers in the premi-

*Opinion of Court below.*

ses, providing finally for the approval and acceptance of the bid by the city councils, which has been given by joint resolution. This joint resolution has not been laid before the mayor for his approval. [We are of the opinion that this joint resolution was not such "legislative action" as under the statutes required the approval of the mayor.]⁴ He had already approved the ordinance directing the sale of this specific property, and the terms and conditions of the sale; everything except the mere price, was fixed. It differs materially from the case of Fuller v. Scranton, 18 W. N. 18, and differs essentially from the case in relation to the purchase of a poor farm argued with this case. If, then, the various acts of assembly, cited in relation to cities of the second class, be constitutional and valid, we see no good objection to the validity of the proceedings, unless a decree of court was necessary.

By act of assembly, approved April 28, 1887, § 1, P. L. 75, it is enacted that "the courts of Common Pleas of the several counties . . . . . shall have jurisdiction and are hereby authorized to decree a public or private sale of any poor house property, or real estate held for the relief and employment of the poor, in any county, city, borough, township or poor district, at such times and in such parts or parcels and upon such terms as, in the opinion of any such court, may be considered most advantageous." The second section provides for the petition of the overseers, directors or managers, and that the sale shall only be ordered "after a full and careful investigation by the court," and provides for the investment of the proceeds by direction of the court. The third section of the act contains a general repealing clause of all acts inconsistent herewith. Does this act become a part of the law governing the sale and purchase of property for poor purposes belonging to the city of Pittsburgh, i. e., cities of the second class? This and the questions of the constitutionality of the acts of May 25, 1887, and June 14, 1887, in our opinion, raise the only doubtful questions in the case.

Counsel for defendants have argued very forcibly and ingeniously that special and local legislation in regard to poor districts is not forbidden in the constitution, and in this they are supported by a suggestion or dictum in the opinion of the Supreme Court in the recent case of Jenks Tp. v. Sheffield Tp., 135 Pa. 400.

Opinion of Court below.

With great respect for the learned judge making the suggestion (who was a distinguished member of the constitutional convention,) we cannot agree with this view, until it shall be so decided by him or by the Supreme Court. It is true that the seventh section of the third article of the constitution does not in the precise words prohibit local legislation for poor districts, as it does for school districts, and for this very good reason: the care of the poor had always been considered a municipal function and " affairs of counties, cities, townships, wards and boroughs," for which local laws are prohibited in the second paragraph of § 7, while the uniform rule had been to treat schools and school districts as something separate and independent of the ordinary municipal governments. The same reason will apply to other articles in the constitution where school districts are mentioned and poor districts are not named. In article IX., §§ 8 and 10, on taxation and finance, school districts are named, but poor districts are not. Certainly, these sections were intended to include all officers, bodies or departments, that could involve a community in debt or who managed the affairs of such community. It was no more necessary to specify poor districts than to specify police districts or road districts, or to specify township auditors.

The seventh section of article III. prohibits local legislation " creating offices or prescribing the powers and duties of officers in counties, cities, boroughs, townships, election or school districts." Can there be any doubt that the old board of guardians, or the new officers provided for the care of the poor in cities of the second class, are city officers ? The last paragraph of § 7 prohibits the passing of any law " granting powers or privileges in any case where the granting of such powers and privileges shall have been provided for by general law, or where the courts have jurisdiction to grant the same or give the relief asked for." It seems to us that the act of April 28, 1887, is a general law providing for the sale and purchase of property and for the care of the poor.

These acts in relation to the care of the poor and the property held for the care of the poor in cities of the second class can only be sustained, as independent of the general law, on the ground of the legislative power to classify cities. That this power exists is not an open question ; to what extent is a

difficult and doubtful question.  In the important case of How-
ard v. Pittsburgh, that came before us within a year, and was
very ably argued on both sides, we gave our reasons for [sus-
taining as valid the act of June 14, 1887, as against objections
to the title and to the main provisions of the act, the main ob-
jections raised being substantially the same as in the case now
before us.  We do not deem it necessary to repeat these rea-
sons, but refer to them as our reasons for holding the acts in
relation to the poor affairs of the cities of the second class to
be constitutional.  Nor, until reversed by the Supreme Court,
do we feel inclined to change our views.] [5] [6]   The case of Kil-
gore v. Magee, 85 Pa. 401, still stands undoubted and approved
by the Supreme Court as the law for Pittsburgh.   The recent
decision of the Supreme Court, and the discussion therein of
these questions, in the case of Shaaber v. Reading City, 133
Pa. 643, seems to us also to be in the line sustaining the con-
stitutionality of this legislation.

We therefore refuse to grant the decree prayed for.

And now, September 24, 1890, . . . . it is ordered, adjudged
and decreed as follows :

1. That the contract heretofore entered into between Milton
I. Baird, of the city of Pittsburgh, and the city of Pittsburgh,
dated August 4, 1890, providing for the sale by the city of
Pittsburgh to the said Milton I. Baird of what is known as the
City Farm, with all the improvements thereon, situate in Mif-
flin township, Allegheny county, Pennsylvania, is a valid exist-
ing contract between said parties, and that said contract, by a
writing duly signed, sealed and delivered, was by said Milton
I. Baird, transferred and assigned to the said Carnegie, Phipps
& Co., Limited.[10]

2. That the city of Pittsburgh, in accordance with the pro-
visions of said contract, shall, on the compliance by the said
Carnegie, Phipps & Co., Limited, with the provisions of said
contract, duly execute, acknowledge and deliver to the said
Carnegie, Phipps & Co., Limited, a deed for the property de-
scribed in said contract, vesting in said Carnegie, Phipps &
Co., Limited, and their successors and assigns, thereby, a good
and indefeasible title to the same.[11]

3. That the relief prayed for by the plaintiff is denied and
the bill is dismissed.[12]

4. That the costs in this case shall be paid by the city of Pittsburgh.

—Thereupon the plaintiff took this appeal, specifying that the court erred:

1–6. In the findings and conclusions of the opinion in . [ ]¹ ᵗᵒ ⁶

7–9. In not decreeing as prayed for in the bill.⁷ ᵗᵒ ⁹

10–12. In the several parts of the decree.¹⁰ ᵗᵒ ¹²

*Mr. W. W. Thompson* for the appellant.

(1) That, prior to the act of March 22, 1877, P. L. 16, the Guardians for the Relief and Employment of the Poor of the City of Pittsburgh was a distinct and independent municipal corporation, counsel cited: Acts of March 5, 1804, 4 Sm. L. 144; March 18, 1816, P. L. 160; April 6, 1867, P. L. 846; April 1, 1868, P. L. 565 (incorporating act and supplements); Dillon on Mun. Corp., § 89; acts of March 9, 1771, 1 Sm. L. 332; March 11, 1809, 5 Sm. L. 18; February 28, 1835, P. L. 45; § 26, act of April 15, 1834, P. L. 515 (acts for the relief of the poor); act of March 9, 1843, P. L. 61; act of March 6, 1847, P. L. 233; act of April 5, 1862, P. L. 246; act of March 12, 1869, P. L. 967; act of May 23, 1874, P. L. 230; act of June 12, 1878, P. L. 182.     (2) That the act of March 22, 1877, P. L. 16, was unconstitutional, counsel cited: Section 3, article III. of the constitution; Bittinger's Est., 129 Pa. 343; Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219; Hatfield v. Commonwealth, 120 Pa. 395; Sewickley Bor. v. Sholes, 118 Pa. 165; Union Pass. Ry. Co.'s App., 81* Pa. 91; Phœnixville Bor. Road, 109 Pa. 44; Rogers v. Imp. Co., 109 Pa. 109; Airy St., 113 Pa. 281: Beckert v. Allegheny, 85 Pa. 191; Dorsey's App., 72 Pa. 192.     (3) That, if it was intended by the act of June 14, 1887, P. L. 395, to transfer the powers and authority of the guardians of the poor to the city of Pittsburgh, or to the chiefs of the departments created by it, the act was unconstitutional: Section 6, article III. of the constitution; Donohugh v. Roberts, 11 W. N. 186; Titusville I. Works v. Oil Co., 122 Pa. 627.     (4) That, as the city in attempting to make the sale had not followed the provisions of the act of April 28, 1887, P. L. 75, it could not be sustained unless authorized by the act of May 25, 1887, P. L. 263, or § 12, act of June 14, 1887, P. L. 397; the act of May 25, 1887, is both local and special: Com-

monwealth v. Patton, 88 Pa. 258 ; Scowden's App., 96 Pa. 422 ; Weinman v. Railway Co., 118 Pa. 192 ; Scranton School D.'s App., 113 Pa. 176 ; Frost v. Cherry, 122 Pa. 427 ; and § 12, act of June 14, 1887, is invalid : Ayars' App., 122 Pa. 281 ; Frost v. Cherry, 122 Pa. 428 ; Ruan St., 132 Pa. 275 ; § 7, article III. of the constitution : Potter's Dwarris, 189 ; Endlich on Statutes, §§ 43, 45, 203. (5) That the approval by the mayor of the ordinance approving the contract was necessary : Fuller v. Scranton, 18 W. N. 18 ; Verona Bor.'s App., 108 Pa. 83 ; Kepner v. Commonwealth, 40 Pa. 124 ; Marshall v. Allegheny, 59 Pa. 461 ; Waln v. Philadelphia, 99 Pa. 337 ; Sower v. Philadelphia, 35 Pa. 236.

*Mr. D. T. Watson* and *Mr. P. C. Knox* (with them *Mr. W. C. Moreland*, City Solicitor, and *Mr. James H. Reed*), for the appellees.

Counsel cited : (1) Act of March 6, 1847, P. L, 233 ; act of May 25, 1887, P. L. 263. (2) Act of March 22, 1877, P. L. 16 ; act of June 12, 1878, P. L. 182 ; Kilgore v. Magee, 85 Pa. 401 ; Philadelphia v. Fox, 64 Pa. 180 ; Blood v. Mercelliott, 53 Pa. 394 ; Commonwealth v. Green, 58 Pa. 234 ; Noble v. Biddle, 81* Pa. 433. (4) Act of June 14, 1887, P. L. 395 ; Mormon Church v. United States, 136 U. S. 47 ; Oil City Bor. v. City of Oil City, 1 Leg. Gaz. R. 502 ; Klinkener v. School D., 11 Pa. 448 ; Pott v. School D., 42 Pa. 132 ; 1 Dillon on Mun. Corp., 3d ed., §§ 60–62 ; 2 Potter on Corp., §§ 699, 700, 713. (5) As to " legislative " acts of councils : Section 4, act of May 23, 1874, P. L. 232 ; Dillon on Mun. Corp., 3d ed., §§ 66, 67 ; Oliver v. Worcester, 102 Mass. 489, 499 ; Fair v. Philadelphia, 88 Pa. 310 ; Collins v. Philadelphia, 93 Pa. 272 ; West. Sav. Fund Soc. v. Philadelphia, 31 Pa. 183. (7) Act of June 14, 1887, P. L. 395 ; Wheeler v. Philadelphia, 77 Pa. 338 ; Kilgore v. Magee, 85 Pa. 401 ; Ayars' App., 122 Pa. 275 ; Ruan St., 132 Pa. 277 ; Shaaber v. Reading City, 133 Pa. 643 ; Jenks Tp. v. Sheffield Tp., 135 Pa. 400 ; Wolf's App., 58 Pa. 471.

PER CURIAM:

The decree of the court below is affirmed, and the appeal dismissed at the costs of the appellants.

Decree affirmed.