## CITY OF ALMA v. GUARANTY SAV. BANK.

### (Circuit Court of Appeals, Eighth Circuit. February 12, 1894.)

### No. 300.

MUNICIPAL BONDS—VALIDITY—ORDINANCE—RESOLUTION.

Where bonds are issued under Gen. St. Kan. 1889, par. 961, which declares that cities may "borrow money and issue bonds therefor" whenever "the city council shall be instructed so to do" by vote of the inhabitants, it is no objection to the validity of such bonds that the council submitted the matter to the electors by means of a resolution, rather than an ordinance, where there is nothing in the statutes expressly requiring an ordinance in such case. National Bank of Commerce v. Town of Granada, 54 Fed. 100, 4 C. C. A. 212, 10 U. S. App. 692, distinguished.

In Error to the Circuit Court of the United States for the District of Kansas.

Action by the Guaranty Savings Bank against the city of Alma upon coupons on certain municipal bonds. Plaintiff obtained judgment. Defendant brings error.

This was a suit on coupons of municipal bonds which were issued and sold by the city of Alma, a city of the third class of the state of Kansas, situated in the county of Wabaunsee. The power to issue the bonds was derived from section 38, art. 3, of an act to provide for the incorporation of cities of the third class (vide Gen. St. Kan. 1889, par. 961), which is as follows: "The council may provide for making any and all improvements of a general nature in the city, and for the purpose of paying for the same may, from time to time, borrow money, and may issue bonds therefor, and street bonds to contractors and others performing work or furnishing materials; but no such money shall be borrowed or bonds issued until the city council shall be instructed so to do by a majority of all the votes cast at an election held in such city for that purpose. Bonds issued under this section shall be payable in not less than ten years nor more than twenty years from the date of their issue, with interest thereon at a rate not exceeding ten per cent. per annum, with interest coupons attached, payable annually or semiannually. The council shall levy taxes on all taxable property within the

city, in addition to other taxes to pay said bonds at their maturity and their interest coupons as they respectively become due, which taxes shall be paid in cash only." Acting under the foregoing power, the city council, on March 18, 1889, duly passed and recorded in the journal of its proceedings the following resolution:

"Council Chamber, 18th March (cont'd), 1889.

. "Motion by Fred Craft, and seconded by Geo. M. Keene, that the following resolution be adopted: Resolved, that, complying with the request of many citizens and electors, publicly expressed at a meeting of the citizens of the city of Alma held at the courthouse on the evening of the 16th day of March, 1889, we deem it advisable to call a special election to obtain the will of the electors of this city as to whether or not the said electors will instruct the city council of Alma to issue bonds of the said city in the sum of $25,000.00 for the purpose of carrying on general improvements; that said bonds, if issued, shall be payable in twenty years from the date of their issue, and shall bear interest at the rate of seven per cent. per annum, with interest coupons attached, payable semiannually at the fiscal agency of the state of Kansas at the city of New York, N. Y.; that such election be held on the first Monday in April, 1889, at the courtroom in the courthouse in said city, and that Henry Pauly, Geo. M. Keene, and William K. McDonald, members of the city council, be appointed judges of such election, and that Henry Weygand and V. C. Welch be designated as clerks of such election, and that the polls be opened at eight o'clock a. m., and close at six o'clock p. m.; of said day; and that the ballots shall be worded, 'For instructing the city council to issue the bonds,' and 'Against instructing the city council to issue the bonds;' and that the mayor make proclamation of such election by publication in the city official paper."

The proposition contained in the foregoing resolution was voted upon by the inhabitants of the city at an election which was held on April 1, 1889, after being duly advertised, and after due proclamation by the mayor. It so happens that said election was coincident with the regular annual election held on April 1, 1889, for the election of city officers. The vote taken on said proposition was duly canvassed by the city council, and the proposition to issue bonds was found to have been carried by a very large majority of all the votes cast. Subsequently, and on April 3, 1889, the city council passed the following resolution by a unanimous vote, and caused the same to be duly entered in its journal:

"Council Chamber, April 3rd, A. D. 1889.

. "Resolved, that acting in obedience to the expressed will of the electors of the city of Alma, at the election held on the 1st day of April, A. D. 1889, in relation to the council issuing improvement bonds in the sum of $25,000 00-100, and being instructed to so issue said bonds, that said bonds now be issued in the form and upon the terms specified in the proclamation of said election; that said bonds be prepared and executed in compliance with the law in such cases made and provided. And further resolved, that, upon signing and execution of the said bonds and coupons, the mayor of the city be requested to negotiate the same at not less than par per cent. of their face value, and make report of his doings in respect to the same at the next regular meeting of the city council, or at a special meeting called for that purpose before such regular meeting."

Subsequently, the bonds were duly executed under the hand of the mayor and clerk, with the seal of the city attached, and the same were sold, and the city received, and still retains, the proceeds. The bonds thus issued were entitled "Improvement Bond." On their face they contained a recital of the law under which they had been issued, and a copy of the same, to wit, section 38, art. 3, supra, was printed on the back of each bond. They were also duly registered in the office of the auditor of the state of Kansas on April 5, 1889. The case was tried to a jury in the circuit court, and the trial judge directed a verdict against the city, and in favor of the holder and purchaser of the bonds. To reverse the judgment entered on that verdict, the city has sued out a writ of error.

David Overmyer, for plaintiff in error.
J. B. Larimer and J. D. McFarland, for defendant in error.

Before SANBORN, Circuit Judge, and THAYER, District Judge.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

The city of Alma contests the validity of the judgment rendered by the circuit court, mainly on the ground, that its counsel did not enact an ordinance providing for the submission to the electors of the proposition to issue improvement bonds. It is claimed that under the charter of the city a resolution of the council, such as was in fact adopted, was not the proper mode of inviting an expression of the popular will touching an issue of improvement bonds, and that, because a resolution was passed in lieu of an ordinance, all subsequent proceedings taken thereunder were invalid, and the bonds are void. Incidentally, it is suggested that as the charter provided that improvement bonds "shall be payable in not less than ten years, nor more than twenty years from the date of their issue," bonds like those now in suit, which were "to be paid in twenty years after date," do not conform to the charter, and are therefore invalid. We may dispose of the latter suggestion with the remark that, in our judgment, a bond made payable "in twenty years after date" is, by the common acceptation of those terms, a bond which matures at the expiration of 20 years, and that neither the payor nor the payee can enforce the payment of a bond thus drawn until the lapse of that period. We have no doubt that the bonds in suit conform to the charter, so far as respects the time of payment.

The other contention, that an ordinance should have been passed, in lieu of a resolution, rests upon no charter provision which expressly requires an ordinance to be passed for the purpose of obtaining an expression of the popular will, but is founded altogether upon inferences drawn from various charter provisions which do in fact require the council to enact ordinances for certain well-defined purposes. For example, the charter of the city empowered the council to enact ordinances "to levy and collect taxes for general revenue not to exceed ten mills on the dollar * * *; to open and improve streets * * * and alleys, make sidewalks, build bridges, culverts, and sewers." Another section of its charter prescribed the form of all ordinances that might be passed by the council, and directed them to be published in a certain way, and to be entered in an ordinance book. Another section of the charter, and the one most relied upon, provided, in substance, that the mayor and council should have no power "to appropriate or issue any scrip, or draw any order on the treasurer for any money, unless the same had been appropriated or ordered by ordinance." And a proviso to this section enacted "that no ordinance * * * for borrowing * * * money, levying taxes, or appropriating money, shall be of any validity unless a majority of all the councilmen * * * shall vote for such ordinance, and such vote shall

be taken by yeas and nays and  *  *  *  entered on the record."
Vide Gen. St. Kan. 1889, pars. 939, 943, 959, 967.    The foregoing sec-
tions, we believe, embrace all of the charter provisions on which
this court is asked to base an inference that an ordinance was nec-
essary to submit a proposition to the inhabitants to issue improve-
ment bonds, and that an ordinance was also necessary to direct the
execution and sale of such bonds after the vote had been taken.
We have given careful attention to the argument presented in be-
half of the city, with the result that we are unable to assent to the
proposition that the bonds in suit are void for the reasons above
stated.    The law is well settled that a municipal corporation may
declare its will as to matters within the scope of its corporate pow-
ers, either by a resolution or an ordinance, unless its charter re-
quires it to act by ordinance; and generally it is of little signifi-
cance whether a legislative measure is couched in the language of
an ordinance or of a resolution, where it is enacted with the same
formalities which usually attend the adoption of ordinances.    If
the action taken by a municipality amounts to prescribing a per-
manent rule of conduct, which is to be thereafter observed by the
inhabitants of the municipality, or by its officers in the transaction
of the corporate business, then, no doubt, the rule prescribed may
be more properly expressed in the form of an ordinance; but it is
eminently proper to act by resolution, if the action taken is merely
declaratory of the will of the corporation in a given matter, and is
in the nature of a ministerial act.    Beach, Pub. Corp. § 484, and cases
there cited.    City of Lincoln v. Sun Vapor Street-Light Co. (decided
at this term) 59 Fed. 756.    In the present case the resolutions in
question appear to have been passed, and entered at large upon
the journal of the council, in the same manner that the council
was then in the habit of passing and recording ordinances.    The
record also discloses that the vote was taken by yeas and nays, and
that the resolution of March 18, 1889, directing an election to be
held, was published in substantial compliance with the provisions
of the charter touching the publication of ordinances.    The most
that can be alleged against the resolutions is that they were not
put in the form of ordinances, and that after the council had been
instructed by the inhabitants of the city to issue the bonds, at an
election held for that purpose, the council did not publish its final
resolution to issue the bonds, which had been passed in obedience
to the popular mandate.    It is also noteworthy that all of the
proceedings taken to secure an issuance of the bonds were con-
ducted with the greatest publicity and apparent fairness.    It is not
charged that the resolutions were rushed through the council se-
cretly, or with indecent haste, or that any one has been defrauded,
or that the city did not receive full value for its bonds.    More-
over, it is apparent, from an inspection of the first resolution, that,
before the council took any action, the project of issuing the bonds
had been discussed at a public meeting of the inhabitants of the
city, and that the council had been requested to order an election.
Under these circumstances, the bonds in suit should not be declared
invalid, in the hands of any holder of the same, unless the charter

of the city contains unmistakable evidence that the council could not lawfully act otherwise than by an ordinance. It is sufficient to say that we find nothing in the various provisions of the charter, to which our attention has been directed, which can be said to clearly indicate that the power to call an election to vote on a proposition to issue improvement bonds can only be exercised by ordinance; and we think that, after such an election had been lawfully called and held, the council had an undoubted right to order an issuance of bonds by a resolution, inasmuch as it had been instructed to issue them by a popular vote. Indeed, it might well be claimed, in view of the peculiar language of section 38, art. 3, supra, that a popular vote instructing the council to issue bonds for general improvements, was so far mandatory as to deprive the council of all discretion, and make it obligatory upon that body to obey the popular mandate. But, waiving that point, it is to be observed, that, whenever the charter in question authorizes particular acts to be done by ordinance, it is dealing with matters wholly foreign to the issuance of bonds for general improvements, which can in no event be issued without the sanction of a popular vote; that is to say, it is dealing with the subject of levying taxes, opening streets and alleys, building sewers, appropriating money, and drawing warrants or other like orders, usually termed "scrip," on the city treasury. In the section relating to the issuance of bonds for public improvements, which is quite full and complete in itself, the word "ordinance" is not employed. We are unable, therefore, to discover in the aforesaid provisions of the charter any imperative reasons why a proposition to issue bonds, as contemplated by section 38, may not be submitted to the people in the form of a resolution as well as in the form of an ordinance. If, as in the present instance, the proposition upon which the citizens of the municipality are asked to vote is fairly stated in the resolution, and the same is duly proclaimed or advertised, we cannot conceive of any substantial reason why a resolution does not answer all of the purposes of an ordinance.

In support of its contention that the bonds in suit should be held to have been issued without authority of law, much stress is laid on a recent decision of this court in National Bank of Commerce v. Town of Granada, 54 Fed. 100, 4 C. C. A. 212, 10 U. S. App. 692; but an examination of the opinion and statement in that case will show that it is readily distinguishable from the case at bar. In the case last referred to the town was required to act in obedience to laws which are materially different from the charter provisions involved in the present suit. But it is more important to observe that the laws of Colorado which were then under consideration, in terms, required the town to act by ordinance, and it had assumed to so act but in doing so it had utterly failed to comply with certain mandatory provisions of a state statute, which rendered the pretended ordinance utterly void, as this court then held. The ordinance in question had neither been recorded, nor authenticated by the signature of the presiding officer, nor published as the statute of Colorado required, by reason of which facts it had not become operative. Nothing was decided in the last-mentioned case which can be said to con-

trol the decision in the case at bar. Our conclusion is that the record now before us discloses no material error, and the judgment of the circuit court is therefore affirmed.