Filed April 30, 1895.

————— ◆ —————

No. 17,341.

THE BOARD OF COMMISSIONERS OF DAVIESS COUNTY *v.* THE STATE, EX REL. THE CITY OF WASHINGTON.

BRIDGES.— *County Commissioners, When can not be Compelled to Build within Limits of City or Town.—Statute Construed.—Mandamus.*—Section 3283, R. S. 1894, authorizing county commissioners to build bridges within the limits of towns and cities, when the estimated cost shall exceed $500, does not confer power on cities, by mandate or otherwise, to force the county board to build a bridge at any point deemed desirable or convenient by the city government. That must be left to the sound discretion of the commissioners, except in cases of extraordinary public necessity. And even if a public necessity should be shown for the bridge, it is the judgment of the

board, and not that of the city authorities, which is to determine what kind of a bridge shall be built. Plans and specifications prepared and approved by the city can have no control over the action of the county board.

From the Daviess Circuit Court.

*W. Heffernan* and *E. Mattingly*, for appellant.

*T. S. Crutcher, M. S. Hastings, J. G. Allen* and *E. E. Hastings*, for appellee.

HOWARD, J.—The city of Washington, as relator, caused an alternative writ of mandate to issue against the appellant Board of Commissioners, to compel the board to erect a bridge upon a street of said city, where the same crosses a running stream.

A demurrer having been overruled to the alternative writ, a return thereto in five paragraphs was filed by the appellant. Other pleadings were also filed, and the court, at the request of the appellee, made a special finding of the facts, being substantially the same facts as alleged in the alternative writ. Conclusions of law were then found in favor of the appellee, and the appellant was ordered to construct the bridge.

The errors assigned call in question the correctness of the rulings upon the pleadings, and also of the conclusions of law. We think that all questions so raised may be determined in considering the sufficiency of the alternative writ of mandate.

The case is well presented, the briefs of counsel on both sides being models of clear and concise argument, with apt citation of authorities.

The city claims the right to compel the county to build the bridge in question under provisions of section 4 of an act approved March 7, 1885, Acts 1885, p. 74; being section 3283, R. S. 1894 (section 1521, Elliott Supp.), which reads as follows:

"Section 4. All bridges, the estimated cost of which

shall exceed five hundred dollars, to be built within the corporate limits' of any city or town within this State, shall be built by the board of county commissioners in the same manner and paid for out of the same funds that other bridges without such corporate limits of such town or city are by law built and paid for.''

In construing a statute, the intention of the Legislature must be kept constantly in view. This intention is to be collected from an examination of the whole, as well as the separate parts of the statute, and when ascertained, will prevail over the literal import of particular terms, and will control the strict letter of the statute, when an adherence thereto would lead to injustice, absurdity, or contradictory provisions. *Stout* v. *Board, etc.,* 107 Ind. 343.

To discover the intention of the Legislature in the enactment of a statute, we may also look to other statutes upon the same subject, and, if possible, harmonize what may seem conflicting, so as to bring all into a general and uniform system. Statutes upon the same or kindred subjects, even though no longer in force, may be considered, in seeking to arrive at the meaning of the statute in question. *City of Evansville* v. *Summers,* 108 Ind. 189; *Maxwell* v. *Collins,* 8 Ind. 38; *Taylor* v. *Board, etc.,* 67 Ind. 383; *State, ex rel.,* v. *Harrison,* 116 Ind. 300.

In the statute under consideration, it is provided that bridges within the corporate limits of cities and towns, the estimated cost of which shall exceed five hundred dollars, ''shall be built by the board of county commissioners in the same manner and paid for out of the same funds that other bridges without such corporate limits of such town or city are by law built and paid for.'' The question is whether these words are mandatory in such a sense that the board is required to build a bridge

within the city at the request of its common council; or whether the board may exercise its discretion in the matter, as in case of building bridges outside the corporate limits.

We may also look to the title or preamble of an act, as well as to its several sections, in order to discover the probable intention of the Legislature in its enactment.

The title of the act containing the section is as follows:

"An act to authorize county commissioners to construct free turnpikes in certain cases, instead of county bridges, and to authorize boards of county commissioners to construct and pay for bridges built in the corporate limits of towns and cities." It will be noticed that it is here proposed to "authorize," not to "*require*," county boards to build bridges in cities and towns. It may likewise be observed that the word "authorize" is used twice in the title; both times, we may well believe, in the same sense. Yet it will hardly be contended that as first used the meaning is that the county boards can be compelled to construct turnpikes instead of bridges.

It may be well, too, to remark that, while section 4 of the act extends the supervision of county commissioners, in certain cases, to the building of bridges within, as well as without, the limits of municipal corporations, the remaining sections relate to the construction of free turnpikes in place of bridges throughout the county.

Counsel for appellee dwell upon the words, "shall be built by the board of county commissioners," to draw our attention to the mandatory character of the section; while counsel for appellant insist that the apparently mandatory meaning of these words is modified by the words following, which provide that such bridges should be built by the board "in the same manner and paid for out of the same funds" as other bridges of the county.

As to the building of county bridges outside the cor-

porate limits of cities and towns, there is no doubt that the action of the board is discretionary.

Section 3275, R. S. 1894 (section 2885, R. S. 1881), provides that, "Whenever in the opinion of the county commissioners, the public convenience shall require that a bridge should be repaired or built over any watercourse, they shall cause survey and estimate therefor to be made, and direct the same to be erected."

Section 3282, R. S. 1894 (section 2892, R. S. 1881), provides that, "The board of commissioners of such county shall cause all bridges therein to be kept in repair."

In considering these sections of the statute, it was said in the case of *State, ex rel.,* v. *Board, etc.,* 119 Ind. 444: "When the question of building or repairing a bridge involves merely the matter of public convenience, the subject is then entirely within the discretion of the board of commissioners, and it is not for the courts to interfere in any manner to control the judgment of that body. Where, as in this case, a bridge is practically destroyed, and the alternative is presented of repairing it, or of abandoning the bridge and resorting to some other means or place in order to cross the stream, the question is then one of public convenience, which, by the express terms of the statute, is committed to the 'opinion,' or discretion, of the county commissioners. * * * Circumstances may arise which may justify the board of commissioners, in the exercise of its discretion, in discontinuing or removing a bridge, in order to save the expense of maintaining it. * * *

"The duty of county commissioners to cause all bridges to be kept in repair, so as to prevent injury to persons traveling upon the public highways of which they form an essential part, is in no sense discretionary. That is an absolute obligation, designed for the safety and pro-

tection of the public.   So, if the use of a public high-way, which constituted the only reasonably available means of public communication, was substantially de-stroyed by the failure to repair a bridge, the question then would not be one of public convenience, but of prac-tical necessity.   Doubtless, cases might arise in which it would be the imperative legal duty of the commissioners to afford the means, or take the necessary steps, to make the repairs.   *State, ex rel.*, v. *Demaree*, 80 Ind. 519; *State, ex rel.*, v. *Board, etc.*, 80 Ind. 478.   *   *   *

"Mandamus is an extraordinary remedy, the writ being one of the highest known to the law, and it only issues against a public officer or tribunal when the law impera-tively enjoins the performance of a specified act or duty which the officer or tribunal refuses to perform.

"There is no proposition more firmly settled than that where official action depends upon the exercise of the judgment and discretion of the officer, courts can not in-terfere to dictate how the officer shall act, or what judg-ment he shall give.  High Extraord. Leg. Rem., section 42, *et passim.*  As long as there is any room for reason-able doubt as to whether or not a matter depends upon the result of an inquiry or investigation into the facts, or which involves the hearing and consideration of evidence which is to control the action of the officer or tribunal, courts will not undertake to review the conclusion or judgment collaterally, in a mandamus proceeding, after the officer or body has acted.  *Holliday* v. *Henderson*, 67 Ind. 103; *People* v. *Common Council*, 78 N. Y. 33.

"It appears, from the facts found, that the board of commissioners, in the exercise of its discretion, refused to order the bridge repaired.   The present is, therefore, not a case where the commissioners refused to act, but is one in which they did not act in a manner to suit the

relators, who now ask the court to compel them to reverse their former action.   This can not be done by mandamus proceedings.   The case is fully within the principles which controlled the judgment in *Board, etc.,* v. *State, ex rel.,* 113 Ind. 179.'' ·

If a county board, as Judge MITCHELL so conclusively shows in *State, ex rel.,* v. *Board, etc., supra,* can not be compelled to repair a bridge where the public convenience, in their opinion, does not require it, with still greater reason, it may be said that they can not be required to build a new bridge where they do not judge that public utility requires it.

Is the case any different where a city is the relator from what it would be where a private citizen occupied that position?  We do not think so.   If a city could, by mandate, compel the erection, by the county board, of a bridge within the corporate limits, at a place, or of a kind, or at a total cost, which the board should not deem justified by the public needs, or with due regard to the revenues of the county, then the discretion of the board would be set aside, and the discretion of the city council substituted in its place.   Certainly the Legislature had no such intention.

Doubtless, as in the building of a bridge anywhere else in the county, a case might arise within the limits of a town or city where it would be the imperative legal duty of the commissioners to construct a bridge upon a street across a stream.   The street, as in the case of any other highway, might constitute the only reasonably available means of public communication; and a bridge across the stream, at a cost in excess of five hundred dollars, might be a necessary part of such a street.   Even in such a case, however, the commissioners should themselves be the judges of the kind and cost of the bridge,

conditioned only that it should be sufficient and safe for the needs of the situation.

No such situation is shown in the alternative writ in this case. It does not appear that any public necessity exists for the bridge in question. For all that appears, the people may be able to cross the stream on other streets but little removed from the street where the bridge is demanded. Even, moreover, if the bridge were shown to be a public necessity at that place, still the commissioners should be allowed to build such a bridge as they might think best at the point. The county board can not be required to accept the plans, specifications and estimates of the city engineer.

Should it appear, to the satisfaction of the court, that a bridge was absolutely necessary at the locality, not simply a matter of public convenience, and that its cost must exceed five hundred dollars, then it may be that the mandate would lie. But if it is simply a question of public convenience, the board must itself be the judge of such convenience, and its discretion can not be controlled by the courts.

The question is not different from what it would be were the bridge asked for over any other stream in the county. An overpowering necessity might be shown in one place as well as in another, so that it would be the duty of the board to build the bridge for the safety and protection of public needs. But if it is but a question of public convenience, the commissioners must be the judges of such convenience, whether within or without the corporate limits of a city or town; and even if a public necessity should be shown for the bridge, it is the judgment of the board, and not that of the city authorities, which is to determine what kind of a bridge shall be built. Plans and specifications prepared and

approved by the city can have no control over the action of the county board.

It is contended that if the interpretation which we have given to the statute in question is to prevail it will bring about a conflict between that statute and section 3623, R. S. 1894 (section 3161, R. S. 1881), which provides that "the common council shall have exclusive power over the streets, highways, alleys and bridges within such city, and may prescribe the height and manner and construction of all such bridges."

This statute is older than that which we are considering, and if there should be conflict, the later enactment must prevail, as the last expression of the legislative will. But we do not think there is any necessary conflict. The county board is authorized to build bridges, costing over five hundred dollars, in cities and towns, as well as elsewhere in the county. It may well be that if the city or town were unwilling that such a bridge should be built by the county board, there would be no authority to build it. The statute, however, proceeds on the idea of comity and good will between the two corporate bodies, who, to a large extent, represent the same citizens and taxpayers. If, therefore, the city or town presents to the county board its request for a bridge of certain style and dimensions and of certain material, to be erected on a street over a stream in the corporation limits, and the county agrees to the proposition, or if the two bodies come to a compromise agreement on the matter, that will be consent on the part of the city or town to waive its jurisdiction for the time being and during the building of the bridge. If no such understanding can be arrived at, it may be that the county might not have jurisdiction to build the bridge.

In any case the city or town would, of course, have the right to build a bridge of any kind or at any cost within

its own limits at its own expense. *City of New Albany* v. *Iron Substructure Co.*, 141 Ind. 500; *City of Wabash* v. *Carver*, 129 Ind. 552.

The statute simply authorizes the county board to build large bridges, costing over five hundred dollars, in cities and towns. This, indeed, is only just. The residents of the city or town are taxpayers also of the county, and it is only proper that the commissioners of the county, out of the common treasury, whose revenues are supplied by taxation on city and town as well as on country property, should build bridges within as well as without the corporate limits. Indeed the residents of the parts of the county outside the corporate limits are almost as much interested in having good bridges in their market towns as are the citizens of the towns themselves. The statute is a most equitable one when applied in the spirit in which it was enacted.

It was never intended, however, that the statute should give to the city power, by mandate or otherwise, to force the county board to build a bridge at any point deemed desirable or convenient by the city government. That must be left to the discretion of the commissioners, except in case of extraordinary public necessity. Such necessity is not shown in the present case.

The judgment is reversed, with instructions to sustain the demurrer to the alternative writ of mandate.

Filed May 3, 1895.