BRAZELL *et al.* v. ZEIGLER, County Clerk.

No. 1474.    Opinion Filed July 12, 1910.

(110 Pac. 1052.)

1.    INITIATIVE AND REFERENDUM — Local Legislation—Counties. The power of the referendum reserved to the people of the state by the Constitution (art. 5, sec. 1), and further reserved in section 5 to the legal voters of every county in the state as to all local legislation or action in the administration of county government, held applicable only to laws or legislative acts as distinguished from administrative or executive action. Held, also, that the procedure provided by section 17 of the act of April 16, 1908 (Laws 1907-08, c. 44), carrying into effect the initiative and referendum, is confined to operate on municipal legislation or general laws only; that is, rules of civil conduct of general application throughout the municipality as prescribed by the lawmaking power of such municipality.

2.    SAME—Bridge Contracts. The action of a board of county commissioners in ordering the clerk of the board to advertise in a certain newspaper published in the county for bids for the erection and construction of a certain bridge across a certain stream at a certain place in the county pursuant to Wilson's Rev. & Ann. St. sec. 1405. authorizing the board, among other things, to construct bridges, and the act of March 8, 1901 (Laws 1901, c. 27, art. 3), requiring said board, before letting the contract, to advertise for sealed bids for the construction thereof according to plans and specifications filed in the office of the county clerk, and making said board the sole judge of the places where bridges are necessary, is not legislative but administrative action, involving administrative discretion, and not within the referendum powers reserved to the people by article 5, secs. 1, 5, as carried into effect by section 17 of the act of April 16, 1908.

3.    MANDAMUS—Subjects of Relief—Referendum—Acts of Public Officers. The officer whose duty it is under the act of April 16, 1908, to file referendum petitions, may, after filing said petition, in an action of mandamus to compel him to forthwith transmit the same to the county attorney for a ballot title for the measure, pursuant to section 7 of said act, set up in defense of his failure or refusal so to do that the action sought to be referred is administrative, and as such not within the powers of the referendum reserved to the people by article 5, secs 1, 5, Const., as carried into effect by section 17 of said act of 1908.

(Syllabus by the Court.)

*Error from District Court, Grant County; W. M. Bowles, Judge.*

Petition by Ed. Brazell and others for mandamus to P. W. Zeigler, as county clerk of Grant county. From a judgment sustaining a demurrer to the petition, petitioners bring error. Affirmed.

*Mackey & Stephenson,* for plaintiffs in error.

*F. G. Walling* and *J. B. Drennan,* County Atty., for defendant in error.

TURNER, J. From a judgment of the district court of Grant county rendered and entered March 1, 1910, sustaining a demurrer to their petition wherein they substantially state that defendant in error, as county clerk of said county, had, after filing, failed and refused to transmit to the county attorney of said county for a ballot title their petition in due form of law and unchallenged for insufficiency, which they file as an exhibit, calling for a referendum vote on the action of the board of county commissioners of said county in ordering the clerk of said board to advertise in a certain newspaper 'published in said county for bids for the erection and construction of a certain ·bridge across the Salt Fork of the Arkansas river on the section line between sections 16 and 17, township 25 north, range 4 west, in said county, and praying for a writ of mandamus requiring him so to do, plaintiffs in error, plaintiffs below, qualified voters of said county and a committee representing said petitioners, bring the case here, and assign for error the action of the court in sustaining said demurrer. The case turns upon whether the action of the board in ordering its clerk to advertise for bids for the construction of a bridge at that place was local municipal legislation or administrative action. If the former, the writ should run, otherwise not. The court in sustaining the demurrer in effect held the action sought to be referred to be administrative, and not legislative, and for that reason the referendum could not be invoked against it. In this we concur. It is only legislative action to which the reserved power of the referendum extends as distinguished from executive or administrative action.

In article 5, § 1, of the Constitution, the people expressly reserve to themselves the power to propose laws and to enact or reject the same at the polls independent of the Legislature, and also reserve power, at their own option, to approve or reject at the polls any *act* of the Legislature. By section 5 of the same article the powers of the referendum reserved to the people by the Constitution for the state at large were further reserved to the legal voters of every county as to all local "legislation or action" in the administration of county government. The same section further provides:

"The manner of exercising said powers shall be prescribed by general laws, except that boards of county commissioners may provide for the time of exercising the initiative and referendum powers as to local legislation in their respective counties and districts."

These sections upon their face extend the referendum to laws or legislative acts only, and not to administrative or executive action. In view of this construction which the Legislature undoubtedly had in mind, the act of April 16, 1908 (Laws 1907-08, c. 44), was passed providing for carrying into effect the initiative and referendum powers reserved to the people, and in section 17 specifically confined the machinery provided thereby to operate on "municipal legislation" only. Stripped of unnecessary verbiage, said section on this point provides:

"In all  *  *  *  counties and other municipalities which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved  *  *  *  to the whole people  *  *  *  as to their *municipal legislation,* the duties required by the Governor and Secretary of State by this act as to *state legislation,* shall be performed as to such *municipal legislation* by the chief executive  *  *  *  * "

It further provides, in effect, that the provisions of that act, including those relating to preparation of arguments, shall apply to every city and town in matters concerning the operation of the initiative and referendum in its *municipal legislation,* etc.; that the printing and binding of such measures shall be paid for by the city as payment is provided for by the state as to *state legislation,*

etc.; and that it was the intent to make the procedure in *municipal legislation* as nearly as practicable the same as the initiative and referendum procedure for measures relating to the people of the state at large; showing clearly that the machinery provided by the act was intended to be applicable to refer to a vote of the people, only state and municipal legislation. That this is the proper construction appears from the face of the section of the Constitution and act, *supra,* and has been so held.

*Long v. City of Portland,* 53 Or. 92, 98 Pac. 149, 1111, was a suit to enjon the enforcement of a city ordinance pending its submission to a referendum vote of the people of the city of Portland. On February 26, 1908, the common council of said city passed an ordinance exacting a license fee for the operation of certain vehicles used in the conduct of certain businesses. Within 30 days thereafter a petition invoking the referendum thereon was duly filed, alleging that the city officers were proceeding to enforce it against the owners of all such vehicles before the same had been approved on referendum by the voters of the city. The trial court sustained a demurrer to the petition, and dismissed the suit, and plaintiffs appealed. The question involved was whether the ordinance was municipal legislation. If so, it was subject to the referendum, and did not become effective for 30 days after its passage, and all proceedings to enforce it within said time were void. The Supreme Court held that such it was and reversed and remanded the case. At that time section 1 and section 1a of article 4 of the Constitution of Oregon were, in effect, the same as ours, *supra.* At the general election of 1906, article 4 of the Oregon Constitution was amended, reserving the referendum to the legal voters of every municipality "as to all local, special and municipal legislation" of every character in and for their respective municipalities and districts. An act of February 25, 1907 (Laws 1907, p. 398), provided, among other things, that the referendum petition against an ordinance shall be filed with the auditor within 30 days after the passage of such ordinance, that no city ordinance shall take effect and become operative until 30 days after its passage, except measures necessary for the preser-

vation of the peace, health and safety of the city. The question was there raised, as here, and it was held that said ordinance was municipal legislation, subject to the referendum, and for that reason did not go into effect for 30 days after its passage and approval, and that its enforcement within that time was illegal and could be restrained. The court in passing said:

"The effect of the referendum will not, however, affect in any manner ordinances or resolutions of the council that are not 'municipal legislation.' Section 11 of the legislative act of 1907 (Laws 1907, p. 406) provides that 'no city ordinance, resolution or franchise, shall take effect and become operative until thirty days after its passage by the counsel and approved by the mayor,' and defendant cites this provision as being especially cumbersome to the prompt and expeditious transaction of municipal business, and in proceedings that are *in invitum,* such as those relating to street improvements; but this legislative act can only apply to such ordinances, resolutions, and franchises as are subject to the referendum. It cannot be broader than the provision it seeks to aid. The only acts of the council that are subject to the referendum by section 1a, art. 4, are such as come within the term 'municipal legislation.' Legislation as here contemplated must be considered in the sense of general laws, namely, rules of civil conduct prescribed by the lawmaking power and of general application. By *Opinion of The Justices,* 66 N. H. 629, 33 Atl. 1076, the law is said to be a rule, not a transient, sudden order to and concerning a particular person, but something permanent, uniform, and universal. The action of a municipal council may relate to questions or subjects of a permanent or general character, or to those which are temporary and restrictive in their operation and effect, and ordinarily an ordinance relates to the former, while the latter may be adopted by resolution. The former must be enacted with all the formality required by the charter, while the latter may be adopted with less formality, and its legal effect determined less strictly, unless the charter otherwise provides. 2 Abbott's Municipal Corp. §§ 514, 516; 1 Beach on Public Corporations, §§ 486, 483, 484; 21 A. & E. Ency. 948; 28 Cyc. 347; *City of Alma v. Guaranty Sav. Bank,* 60 Fed. 203, 8 C. C. A. 564; *City of Lincoln v. Sun Vapor Street Light Co.,* 59 Fed. 756, 8 C. C. A. 253; *City of Central v. Sears,* 2 Colo. 589."

Tested by the rule that municipal legislation consists of prescribing by the lawmaking power of the municipality a rule of civil

conduct, was the board in making the order making law or was it administering or executing a law already made? If it was making law it was exercising legislative function and the result of its act was municipal legislation. If it was administering a law already made it was exercising administrative function, and the result of its act not municipal legislation, but administrative action; for, as stated by Mr. McQuillan in his work on Municipal Ordinances, § 80, "executive and administrative duties are such as concern the execution of existing laws." While no doubt, as stated in *Chaska Co. v. Super., etc.*, 6 Minn. 204 (Gil. 130), "boards of county commissioners are public corporations, invested with subordinate legislative powers, to be exercised for local purposes connected with the public good [citing Comp. Stat. 153, § 6; 2 Kent's Com. 309]," it is clear that by so doing the board was administering or carrying into execution law already made, and that too not by themselves, but prescribed by the Legislature of the state.

The Constitution (article 17, § 2) provides:

"There are hereby created * * * in and for each organized county of this state * * * the offices of three county commissioners. * * *"

The Schedule, § 18, provides:

"Until otherwise provided by law * * * the power * * * of all county * * * officers not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers. * * *"

Among the powers granted to the county commissioners under the laws of Oklahoma in force at the time of the admission of the state into the Union are (Wilson's St. § 1405): "They shall have power to make all orders respecting the property of the county * * *" and "Fourth: To construct and repair bridges. * * *" An act of March 8, 1901, (Wilson's St. § 6111) further provides that the county commissioners may let contracts for bridges and to build the same, and that said board "shall be the sole judges of the places and roads where heavy grades, bridges or fills are necessary. * * *" Section 6112, among other things, provides that

no contract shall be let for the building of any bridge across any principal stream until the surveyor or civil engineer provided for in that section shall be employed by the board and shall make plans and specifications and file the same with the county clerk, and said board advertise for four consecutive weeks in some newspaper printed in the county for sealed bids.

It will thus be seen that in calling for bids for the construction of a bridge at a certain point the board was not legislating or making law, but was administering law already made, and in so doing was, in effect, acting administratively and with administrative discretion, and this has been so held.

In *State ex rel. v. Commissioners,* 49 Ohio St. 301, 30 N. E. 785, the relator founded his right to a mandamus against the board of county commissioners upon one section of the statute, requiring them to "construct and keep in repair all necessary bridges over streams and public canals on all state and county roads," and upon another section requiring that they "shall cause to be constructed and keep in repair in the manner prescribed by law, all necessary bridges in villages and cities; * * * on all state and county roads * * * running in and through any such village or city." The court in denying the writ said:

"The necessity for a bridge requiring its immediate construction must, in the prudent administration of the affairs of a county, be relative to many considerations—such as time, means, and the number of other bridges required by public convenience at other places in the county; and, all these things being considered, whether the bridge should be constructed at once is for the determination of the commissioners in the exercise of their administrative functions. * * * The expediency of building or repairing a bridge, however necessary, is an administrative, and not a judicial, question."

And in the syllabus said:

"The expediency of the construction or repair of a bridge, under section 4938, Rev. St., rests in the administrative discretion of the county commissioners, and such discretion cannot be controlled by mandamus."

See, also, *Tucker et al. v. Board of Freeholders,* 1 N. J. Eq. 282; *Patterson Ordinary v. Taylor et al.,* 98 Ga. 646, 25 S. E. 771;

*Board of Commissioners v. State ex rel.*, 141 Ind. 187, 40 N. E. 686; *State v. Freeholders of Essex*, 23 N. J. Law, 214. As in *Long v. City of Portland, supra*, so in *The Opinion of the Justices*, 66 N. H. 629, 33 Atl. 1076, it was held, quoting from 1 Bl. Com. 44, that law "is a rule; not a transient sudden order from a superior to or concerning a particular person, but something permanent, uniform and universal." And so it has been elsewhere held.

In *Shaub v. City of Lancaster*, 156 Pa. 362, 26 Atl. 1067, 21 L. R. A. 691, appellant brought suit against the city to recover a reward of $500. He recovered in the trial court. The liability asserted was under a resolution adopted in 1874 by the common council authorizing the mayor to offer a reward of $500 for the arrest and conviction of any person setting incendiary fires within the limits of the city. An act prior thereto amending the city charter in effect provided that the city council might transact business by order or resolution to be filed in the archives of the city, and that it shall not be necessary for any order or resolution of either branch to be presented to the mayor for his approval, but the same shall be binding for all purposes. The resolution was not signed by the mayor. Pursuant to said resolution, the mayor at once issued the proclamation. In 1879 his successor issued another, and in 1881 his successor another, both reciting said resolution of 1874. Ten years thereafter an incendiary fire occurred in the city, and plaintiff caused the arrest and conviction of the incendiary. He applied to the city authorities for the reward under the resolution of 1874, and, upon payment being refused, brought suit. His right to recover turned upon the question of the nature and effect of the resolution and the proclamation based upon it. On appeal the Supreme Court held, in effect, that the resolution was not an ordinance or law of the city in form, but an order or direction to another department of the city government to perform an act deemed necessary by the council at the time in view of the circumstances then existing; that such directions are ordinarily temporary in character and effect and cease

to be operative with the emergency out of which they arise. Speaking further, the court said:

"  *  *  *  There is a well-marked distinction between acts that are legislative and that lay down a rule of action for the citizen or the city, and acts that relate to the daily administration of municipal affairs. The latter may well be described as 'business' to be transacted by councils, and may be properly left to them to dispose of by 'order or resolution.' * * * This was intended as a remedy for an existing evil, and, when its purpose was accomplished, it became *functus officio*. It was not a permanent law of the municipality, but a temporary order, to meet a temporary necessity. For the purpose in view it bound the city as fully as a formal ordinance could have done; but that purpose was temporary, and embraced a then existing state of things which the order was intended to aid in removing. When its work was done, it required no formal repeal or rescission to terminate its operation, it expired."

And concluded that the compulsory nonsuit was properly entered. See, also, *Seitizinger v. Electric Co.,* 187 Pa. 539, 41 Atl. 454; *Straub v. Pittsburgh,* 138 Pa. 356, 22 Atl. 93; *Howard v. Borough of Olyphant et al.,* 181 Pa. 191, 37 Atl. 258.

In that case it was not questioned that the council was acting pursuant to law already made in directing the mayor to offer the reward. And, as in that case it was held that the resolution ordering him so to do, being pursuant to law already made, was not a law or legislative action, so we will hold in this that the order of the board made pursuant to law authorizing them so to do, ordering the clerk to call for bids for a bridge to be constructed at a certain place, was not a law or legislative action, but administrative action involving administrative discretion, and as such not subject to the referendum.

If it be contended that the referendum is reserved to administrative action by virtue of that part of article 5, *supra,* which reads: "The powers of the * * * referendum are hereby further reserved  *  *  *  as to all local legislation, or action, in the administration of county government  *  *  *  "—we answer, not so, for the reasons stated, but, if in this we err, we say that as the act of April 16, 1908, provides the machinery for referring

"municipal legislation" only, and as the action sought to be referred is not included in that term, the demurrer was properly sustained.

This is not in conflict with our holding in *Threadgill et al. v. Cross, Secretary of State, infra,* 109 Pac. 558. In that case we held, in effect, that in a mandamus proceeding to compel the filing officer to file the initiative petitions for the submission of an amendment to the Constitution to a vote of the people he will not be permitted as a part of his defense to question the validity of such proposed amendment upon the ground that it is violative of an act of Congress accepted by the state, and for that reason will be void if adopted. Here we hold that the officer whose duty it is under the Constitution and law to file referendum petitions and transmit the same to the proper officer for a ballot title will, after filing same, be permitted in an action of mandamus to compel him to so transmit said petitions to set up in defense of his failure or refusing so to do that the action sought to be referred is administrative, and as such not within the reserved powers of the referendum.

The judgment of the trial court is affirmed.

All the Justices concur.